#### IN THE

# COURT OF APPEALS

### OF

# MARYLAND

*December Term,* 1834.

### CALLIS AND SEMMES *vs.* RIDOUT AND RINGGOLD.
#### *December,* 1834.

It is the peculiar province of a court of equity to enforce the performance of trusts, and in general, when it becomes necessary, to appoint a trustee to prevent a failure of a trust, and to carry the same into execution.

The *State* having settled certain confiscated lands upon A & E successively in fee tail, with reversion in fee to the *State,* with a proviso that the estate should not be barred by any act of the tenant in tail, afterwards, upon the petition of the tenants in tail, passed an act directing a sale of so much of the lands as should be necessary to pay the petitioners debts, discharged of the *States'* reversionary interest. This act directed the sale to be made by certain commissioners in a special and particular manner; the creditors entitled to the benefit of its provisions were described in it, and the manner of authenticating their claims was also designated. It directed that the claims should be established to the satisfaction of the commissioners, on or before a particular day, and authorised them to fill up any vacancy which might occur by death, resignation, or refusal to act. The trust was accepted, and a vacancy occurred by the death of one of the commissioners. HELD, that it was the duty of the Chancellor to have compelled an execution of the trust by the commissioners named in the law, that the vacancy which occurred ought to have been filled up by the survivors, and that prior to making any sale, an account ought to be taken of the amount of debts due, to satisfy which a sale should be decreed, and that the debts should be proved in the manner prescribed by the law, and paid out of the proceeds of sale, when made, either by the commissioners, or the proceeds brought into the court of Chancery to be applied and distributed under its direction, and that the Chancellor had no authority to set aside the commissioners named in the act, and appoint a trustee in their place.

One of the commissioners purchased a part of the property devoted by the law to the fulfilment of the trust, under an execution upon judgment against the tenants in tail, HELD, that this purchase ought not to be permitted to enure to his benefit, but that the same ought to be applied to the objects of the trust, as far as may be necessary, after re-imbursing to him the amount of his purchase money, and all proper and necessary expenses.

APPEAL from the court of Chancery.

The appellees *Samuel Ridout,* and *Tench Ringgold,* filed a creditors bill against the appellants *Henry A. Callis,* and *George Semmes,* (and against *Joseph Kent,* who did not appeal,) on the 7th of January, 1832.   They alleged, that by the confiscation act of 1780 the real estate of one *Henry Addison* was forfeited to the *State,* but that it was excepted, out of the property directed to be sold, by the law of the succeeding year 1781 ; and that by an act passed at *April* session 1782, for the relief of *Anthony Addison,* and *Eleanor Callis,* the former being the son and heir apparent of *Henry Addison,* a tract of land called " *Barnaby Manor,*" a part of the real estate of said *Henry Addison,* was vested in said *Anthony* and *Eleanor,* successively, in fee tail, with reversion in fee to the *State,* which it was provided should not be barred, or defeated, by any act whatever, of the tenants in tail.   That *Eleanor Callis* is dead, leaving *Henry A. Callis,* one of the appellants, her only issue and heir in tail.   That the complainants *Ridout* and *Ringgold* have recovered judgments against the said *Callis,* for large sums of money, the former in the year 1808, which was subsequently revived by *scire facias* in 1831 ; the latter in 1832.   That *Addison* and *Callis,* being indebted to various other persons in large sums of money, and being destitute of the means to satisfy them, except by a sale of the aforesaid land, made application to the Legislature for permission to sell the same discharged of the *State's* reversionary interest, and that an act accordingly passed at December session 1822, ch. 65 appointing *Joseph Kent, Clement Smith,* and *George Semmes,* commissioners for the sale of said land, or so much thereof as should be necessary to pay their debts.   That the commissioners accepted the trust conferred upon them by the act, but have not yet sold any portion of the land, and that the creditors of said *Addison* and *Callis* remain unpaid.   That the former is dead without issue of his body, and that the whole estate is now in possession of *Callis.*   That *Smith* one of the commissioners is also dead, and that the survivors *Kent* and *Semmes* refuse to proceed further in the execution of the trust.   The bill

then prays, that the complainants, and the other creditors of *Addison* and *Callis*, may have the benefit of the act of Assembly, by a sale of the land under the authority of the court, and for general relief. The defendants answered severally; *all* admitting the acts of Assembly referred to in the bill, and the indebtedness of *Callis* to the complainants as charged. *Semmes* and *Callis* in their answers, assert, that *Callis* obtained a discharge under the insolvent laws in the year 1825, and that the *fiat* upon the judgment of *Ridout* in 1831 was rendered subject to that discharge, and that *Ringgold's* judgment in 1822 can only operate upon property subsequently acquired by gift, devise, descent, or in a course of distribution. They further state, that the commissioners, appointed by the act of Assembly referred to, offered the property for sale, in the manner provided by the law, but without success, and that continued but fruitless efforts were made to dispose of the same at private sale. That *Semmes* purchased the property in question in 1830, at sheriff's sale, made in virtue of certain writs of execution upon judgments against *Addison* and *Callis*, and was duly and regularly returned as such purchaser. That he was at the time a large creditor of *Callis*, and having despaired of selling the property under the act of Assembly, his object in buying was if possible to save his claim, and not for the purpose of speculation.

The case was regularly set down for hearing, and *Bland* Chancellor at July term 1833 passed his decree, setting aside the commissioners named in the act of Assembly, and appointing a trustee for the sale of the property, or so much thereof, as might be necessary to pay the debts of *Addison* and *Callis*, contracted prior to the passage of the act of 1822. From this decree, *Callis* and *Semmes*, appealed to the court of appeals.

The cause was argued before *Buchanan, Ch. J.* and *Stephen*, and *Chambers*, Judges.

Johnson for the appellants contended,

1. That the Chancellor had no authority to appoint another trustee, to sell the property.

2. That after the death of *Addison*, the property could not be sold for the payment of his debts. The estate was created prior to the act of 1786, and has all the incidents of estates tail antecedent to that law. Upon the death of *Addison*, *Callis* took as a purchaser, *per formam doni*, and not under *Addison* as the first tenant in tail. The land therefore in his hands, is not chargeable with his debts, nor upon the death of *Callis* will it be liable for his debts in the hands of his heir in tail.

3. If however, the Chancellor had the power to appoint a trustee with authority to sell; still the amount of the debts due at the time of the passage of the act of 1822, should have been ascertained *previously* to such sale, in the manner prescribed by the 3d section; and no more land could legally be sold, than would be sufficient to pay such debts. If more should be sold than would be adequate for that purpose, the surplus would be converted into personal estate, and liable to creditors who became such, subsequently to the act of 1822; or it would belong to *Callis*, if there were no such creditors, to the manifest injury of the heir in tail.

4. That the property is not liable for the debts of either *Callis* or *Addison*, they having been tenants in tail created before the act of 1786 ch. 45, and not having done any act to defeat the tenancy, now belonging in expectancy to the son of *Callis*.

5. That *Semmes*, though one of the commissioners was competent to purchase at the sale by the sheriff. But it is said, that the appellants are precluded from raising these questions by the act of 1832 ch. 302, in consequence of their having failed to file exceptions according to the directions of that act. The object of that act, was not to compel the appellate court to affirm the decrees of the Chancellor, where it is apparent to the court, that the complainant is entitled to *no* relief whatever; but to prohibit their noticing objections to the particular case made, and relief granted, unless such objections were presented to the notice of the Chancellor, by exceptions filed in that court. If the bill shows a want of jurisdiction, or the absence of all claim to relief of every

description, this court may, and ought to reverse, though no exceptions were filed. The act meant to cure a title defectively stated, and not a defective title—to heal defective averments, but not to supply averments wholly omitted. If the construction on the other side is the sound one, the complainant *need not file a bill at all.*

MAGRUDER and ALEXANDER for the appellees.

1. No points having been filed by the defendants in the Chancery court, it is not competent for them to urge the objections relied upon here—act 1832 *ch.* 302 *sec.* 5. Objections to the jurisdiction of the court should be made before the Chancellor.

2. If however the question of jurisdiction is open the act of 1822 created a trust altogether within the province of Chancery to enforce. The authority was not conferred on the commissioners to exercise arbitrarily, or not to be exercised at all, at their discretion; but they were constituted trustees for the benefit of third persons, who have a right to invoke the aid of the Chancery court, either to restrain an improper exercise of the power, or to confide the trust to other persons, if they refuse to exercise it altogether.

3. That none of the defences stated in the answers are sustained by proof, and that if proved, they furnish no answer to the relief sought by the complainants. It is argued that the interest of *Callis* cannot be sold for the payment of *Addison's* debts. This in ordinary cases might be so; but in the present case they mutually agreed, that their respective debts should be paid, and they received an equivalent for it, in the relinquishment by the *State* of her reversionary interest in the property. It was not necessary that the decree itself, should provide for the ascertainment of the debts, because as it now stands, the trustee may be compelled to suspend his proceedings, until such ascertainment by an account. But this objection, not having been taken in the answer, cannot be urged. If more land is sold than will discharge the debts, the excess may be treated as land for the benefit of the issue

in tail, or as he is no party, such sale in reference to the excess, cannot affect his interest.

A sale under this act of Assembly, to the extent necessary to pay the debts due at the time it passed, would have docked the entail, just as effectually as a deed of bargain and sale— 4 *Kent Com.* 14. 2 *H.* & *J.* 167. If *Semmes* acquired any interest under his purchase, it was only the residuary interest in *Callis*, after satisfying the trusts created by the act of 1822. But in truth he acquired, and could acquire no interest, his purchase being a breach of trust. A trustee cannot purchase the trust property though sold by another. He cannot contract in reference to the subject of the trust. 2 *Fonb. Eq.* 189, 477.

*Stephen* Judge delivered the opinion of the court.

The principle is well established, that it is the peculiar province of a court of equity, to enforce the performance of trusts, when applied to for that purpose by any person interested ; and in general, when it becomes necessary to appoint a trustee to prevent a failure of a trust, and to carry the same into execution, the court has unquestionable jurisdiction to make such appointment for that purpose. But we think that the Chancellor has erred in this case by appointing a trustee to make the sale prayed for by the complainants in their bill. The act of Assembly creating the trust for the benefit of the creditors of *Addison* and *Callis*, has directed the execution, or fulfilment of it, by certain commissioners, in a special and particular manner.

The creditors entitled to the benefit of its provisions, are described in the law, and the manner of authenticating their claims is also designated. It directs that they shall be established to the satisfaction of the commissioners, on or before a particular day, and that only so much of the tract or parcel of land called *Barnaby Manor* shall be sold, as may be necessary to pay the claims so established. Hence it appeared, that the law clothed the commissioners with a special power, and that their manner of executing the trust was particularly defined. The law also authorised them to

fill up any vacancy which might occur, by death, resignation, or refusal to act. It appears that the trust was accepted by the commissioners, and that a vacancy has occurred by the death of one of their number.

We think that the Chancellor should have compelled an execution of the trust by the commissioners named in the law, and that the vacancy which occurred, ought to have been filled up by the survivors. We also think that prior to the making of any sale, an account ought to be taken of the amount of the debts due by *Addison* and *Callis*, to satisfy which, a sale should be decreed, and that those debts should have been proved and established in the manner prescribed by the law. It is also the opinion of this court, that the purchase made by *George Semmes* of a part of the property, devoted by the law, to the fulfilment of the trust, ought not to be permitted to enure to his benefit, but that the same ought to be applied to the objects of the trust, as far as may be necessary after reimbursing to him the amount of his purchase money, and all proper and necessary expenses. The proceeds of sale when made, should either be applied by the commissioners, to the payment of the creditors entitled to receive the same, or be brought into the court of Chancery, to be applied, and distributed under its direction. We therefore think that the decree of the Chancellor ought to be reversed, and the cause sent back, to be there proceeded in, according to the principles herein contained.

DECREE REVERSED WITH COSTS TO THE APPELLANTS IN THIS COURT.